IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 16, 2003 Session

## EDWARD HOCHHAUSER, III v. ANNELLE G. HOCHHAUSER

**A Direct Appeal from the Chancery Court for Shelby County**
**No. D30255-2     The Honorable Floyd Peete, Jr., Chancellor**

_____

**No. W2003-00119-COA-R3-CV - Filed November 19, 2003**

_____

This is an appeal from a final decree of divorce, involving issues of concurrent awards of alimony *in futuro* and rehabilitative alimony, and an award of attorney fees. Husband appeals. We reverse in part, modify and affirm in part.

**Tenn. R. App.P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Modified and Affirmed in Part**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, JR. and HOLLY M. KIRBY, J., joined.

Joe M. Duncan, Memphis, For Appellant, Edward Hochhauser, III

Richard F. Vaughn, Memphis, For Appellee, Annelle G. Hochhauser

**OPINION**

Edward Hochhauser, III ("Husband," or "Appellant") and Annelle G. Hochhauser ("Wife," or "Appellee") were married on August 1, 1986. Two children were born to the marriage, Kimberly Michelle Hochhauser (dob 7/23/87) and Edward Hochhauser, IV (dob 2/7/89). Wife has a degree in accounting from Mississippi State University. When she and Husband met, Wife was working in the tax department at Holiday Inn. Approximately a year after the marriage, Holiday Inn moved their base of operation. At that time, Wife began working part-time at Husband's dental practice and assumed primary responsibility for the household. Husband's dental practice thrived during the marriage and he set up three offices in the Memphis area and other offices in Nashville, Knoxville and Seymour, Tennessee, and also in Birmingham and Biloxi. The out of state businesses did not make a profit and Husband eventually filed for bankruptcy. Husband sold the profitable Tennessee offices to American Dental Partners and became one of their employees. At the time of the hearing, both parties agreed that Husband's gross income was $150,000 per year.

On February 11, 1999, Husband filed a Complaint for Divorce against Wife, alleging irreconcilable differences. On March 18, 1999, Wife filed an Answer to Husband's Complaint and a Counter-Complaint for Divorce, alleging inappropriate marital conduct and irreconcilable differences. By Order of August 18, 1999, Husband was allowed to amend his original complaint. Husband filed his Amended Complaint on August 18, 1999. The Amended Complaint avers additional grounds of cruel and inhuman treatment, and inappropriate marital conduct on the part of Wife. On September 24, 1999, the trial court entered a Consent Order on Temporary Support. Wife filed her Answer to the Amended Complaint on October 14, 1999.

In January 2000, Wife took a job with Bean-Ison CPAs and Consultants. At the time of trial, Wife worked approximately 1,500 hours per year at this job, at an hourly rate of $16.35 (i.e. Wife earned approximately $25,000 per year). Wife is not a CPA and, at the time of trial, needed an additional nineteen (19) course hours to be eligible to sit for her CPA license.

This matter was heard by the trial court on October 4, 2001. Both parties were forty-nine (49) years old at the time of the hearing. A Final Decree of Absolute Divorce was entered on May 21, 2002.

> This cause came on to be heard before the Honorable Floyd Peete, Jr., Chancellor of Part II of the Chancery Court of Shelby County, Tennessee, statement of counsel representing the parties, upon the testimony of the parties and their witnesses, and upon the entire record in this cause.
>
> From all of which it appears to the Court that a divorce should be granted to both parties pursuant to T.C.A. §36-4-129 in accordance with the terms and conditions set out herein:
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:
>
> 1. A Final Decree of Divorce be and is hereby awarded to the parties herein pursuant to T.C.A. §36-4-129, and the bonds of matrimony heretofore existing between the parties be and they are hereby dissolved.
>
> 2. The parties be and are hereby declared to be the joint custodians of their minor children as expressly provided in the Permanent Parenting Plan entered in this cause, with Annelle G. Hochhauser (hereinafter "Wife") being designated as the primary custodian parent. Edward Hochhauser, III (hereinafter "Husband") shall receive visitation privileges.
>
> 3. Beginning January 1, 2002, Husband be and is hereby ordered to pay to Wife the sum of $2,737 per month as child support for both of the minor children of the parties.
>
> 4. Beginning April 1, 2002, Husband be and is hereby ordered to pay to Wife rehabilitative alimony in an amount not to

exceed Five Hundred ($500) Dollars per month for a period not to exceed five (5) years provided Wife is actively pursuing a license to become a Certified Public Accountant. Wife shall provide documentation to Husband twice a year itemizing the expenses incurred in pursuit of her CPA license. Additionally, Husband shall pay Wife the sum of One Thousand Five Hundred ($1,500) Dollars per month as alimony *in futuro*, and said alimony shall be paid concurrently with the rehabilitative alimony. When Wife is eligible to receive Social Security benefits, Husband's alimony *in futuro* obligation shall be reduced dollar for dollar in accordance with Wife's benefits. Under no circumstances shall Wife's alimony *in futuro* be less that $500 per month.[1]

5. The escrow account in the initial amount of $3,000 be and the same is hereby equally divided between the parties.

6. Husband shall and is hereby obligated to reimburse Wife for seventy (70%) percent of her reasonable attorney fees and expert fees incurred in this cause.

7. Husband shall maintain Four Hundred Thousand ($400,000) Dollars of term life insurance designating the parties minor children as irrevocable beneficiaries with Wife as trustee for Two Hundred Thousand ($200,000) Dollars and Wife as irrevocable beneficiary for Two Hundred Thousand ($200,000) Dollars.

8. Husband shall provide Cobra benefits to Wife for a period of 36 months at his cost.

9. Each party shall retain those checking and/or savings accounts in their respective names, and both parties shall expressly waive any interest in the others checking and/or savings accounts.

10. The Perspective Fixed and Variable Annuity...shall be awarded to Wife.

11. Husband shall retain sole title and exclusive ownership in his dental practice, and Wife shall waive any interest in this asset. Husband shall further be responsible for indemnifying and holding Wife harmless for any indebtedness or obligation arising from his ownership interest.

12. The parties shall divide equally the proceeds from the sale of the Raleigh Doctor's Center. The costs of the upkeep of said facility pending sale shall be paid by Husband, but shall be adjusted so that the parties share equally in said expenses and Husband be given proper credit when the proceeds are divided.

13. The 1994 Honda Civic shall be retained by Wife, and Husband shall execute the necessary documents to transfer the vehicle

---

[1] This paragraph was subsequently amended by Order of September 13, 2002, see *infra*.

to Wife and indemnify and hold Wife harmless for any indebtedness still owing on the vehicle not discharged in Husband's Chapter 7 bankruptcy.

14. Wife shall be responsible for paying the credit cards in her name, and Husband shall be responsible for the debts to Nations Bank (1997 Chrysler Town & Country Van) in the amount of Fourteen Thousand Six Hundred Fifty-two ($14,652) Dollars and Matsco in the amount of One Hundred Fifty-eight Thousand Three Hundred Thirty-five ($158,335) Dollars remaining as contingent liabilities to Wife pending the dischargeability determination in Husband's Chapter 7 bankruptcy. Each party shall indemnify and hold the other harmless for any obligation that either is responsible for paying.

15. The parties shall divide equally the frequent flyer miles.

16. The court costs be and are hereby equally divided against both of the parties for all of which execution issue.

Husband filed a Motion to Alter or Amend Judgment on June 18, 2002. On June 21, 2002, Wife filed a Response to Husband's Motion to Alter or Amend Judgment. An "Order on Motion to Alter or Amend Judgment" was entered on September 13, 2002. Paragraph 4 of the Final Decree as follows:

4. Beginning April 1, 2002, Husband be and is hereby ordered to pay Wife rehabilitative alimony in an amount not to exceed Five Hundred ($500) Dollars per month for a period not to exceed five (5) years provided Wife is actively pursuing a license to become a Certified Public Accountant. Wife shall provide documentation to Husband twice a year itemizing the expenses incurred in pursuit of her CPA license. Additionally, Husband shall pay to Wife the sum of Five Hundred ($500) Dollars per month as alimony *in futuro*, and said alimony shall be paid concurrently with the rehabilitative alimony. When the parties children reach majority and Husband no longer has a child support obligation, Husband's alimony *in futuro* obligation shall be increased to Seven Hundred Fifty ($750) Dollars per month.

All other aspects of the Final Decree of Absolute Divorce not heretofore referenced shall remain in full force and effect.

Husband appeals from the Final Decree of Divorce as modified. He raises the following issues for review as stated in his brief:

Issue I

Did the trial court err in awarding Mrs. Hochhauser both rehabilitative alimony and alimony *in futuro* at the same time?

## Issue II

Did the trial court err in awarding Mrs. Hochhauser rehabilitative alimony for five (5) years rather than two (2) years, which was the time that both she and her employer testified that it would take for her to obtain the sufficient education to sit for her Certified Public Accountant exam?

## Issue III

Did the trial court err in awarding Mrs. Hochhauser alimony *in futuro* when there was no finding by the trial court that she could not be economically rehabilitated?

## Issue IV

Did the trial court err in ordering Dr. Hochhauser to pay 70 percent of Mrs. Hochhauser's legal fees and suit expenses when she received all of the marital assets, and he received none of the marital assets?

Wife raises the following additional issues as stated in her brief:

1.  Did the trial court err in granting Dr. Hochhauser's Motion to Alter or Amend Judgment thereby reducing the alimony *in futuro* from $1,500 per month to $500.00 per month?

2.  Should Mrs. Hochhauser be awarded her attorney fees and costs in defending this appeal?

We will address the issues concerning the trial court's award of both rehabilitative alimony and alimony *in futuro,* including the amounts and durations thereof, concurrently. We first note that, since this case was tried by a court sitting without a jury, we review the case ***de novo*** upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. ***See*** Tenn. R. App. P. 13(d).

Husband contends that the trial court erred in awarding Wife rehabilitative alimony and alimony *in futuro* at the same time. Specifically, he asserts that Wife should not have been awarded alimony *in futuro* at all because neither the facts nor the trial court's ruling found that

Wife was not able to be rehabilitated from an economic standpoint. T.C.A. § 36-5-101(d)(1) (2001) was in full force and effect at the time that the Final Decree of Divorce was granted in this cause on May 21, 2002. T.C.A. § 36-5-101(d)(1) (2001) reads, in relevant part, as follows:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:[2]
>
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;

_____

[2] We note that T.C.A. §36-5-101(d)(1) was subsequently amended to include the following: "An award of periodic alimony may be made either in addition to a rehabilitation award, where a spouse may be partially rehabilitated...or instead of a rehabilitation award, where feasible." *See* T.C.A. §36-5-101(d)(1)(C)(Supp. 2003). The Notes to this amended section indicate that the amendments "shall apply to any pending case in which the judgment of the trial court has not become final by June 17, 2003." Since the Final Decree of Divorce in this case became final well before June 17, 2003, the amendments to §36-5-101(d)(1) are not applicable.

(H) The provisions made with regard to marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) the relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including tax consequences to each party, as are necessary to consider the equities between the parties.

The question of whether the unamended T.C.A. §36-5-101(d)(1), see *supra*, allowed a trial court to order concurrent or successive awards of rehabilitative alimony and alimony *in futuro* was addressed by our Supreme Court in the case of *Crabtree v. Crabtree*, 16 S.W. 3d 356 (Tenn. 2000). Mrs. Crabtree was a Certified Public Accountant and had worked for the accounting firm of Ernst and Whinney for two years before leaving full-time employment to become a homemaker. In the year prior to divorce, Mrs. Crabtree worked approximately thirty (30) hours per week. Mr. Crabtree was a stockbroker with J.C. Bradford and his annual earnings averaged $340,596. The trial court ordered rehabilitative alimony in the amount of $1,700 per month for five (5) years followed by alimony *in futuro* in the amount of $1,200 per month until Mrs. Crabtree's death or remarriage.

The Supreme Court, in *Crabtree*, acknowledged that the Tennessee legislature had, in the rehabilitative alimony statute, "demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse." 16 S.W.3d 357, 358. In relevant part, the Supreme Court held as follows:

> If an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony *only*. An award of rehabilitative alimony pursuant to Tenn.Code Ann § 36-5-101 must be predicated upon a finding that the recipient can be economically rehabilitated. Once awarded, rehabilitative alimony may be modified if the recipient's prospects for economic rehabilitation materially change. *If rehabilitation is not feasible*, the trial court *may then* make an award of alimony in futuro. *Accordingly, a concurrent award of both types of alimony is inconsistent*. At the time of the decree, a trial court must necessarily find that the recipient of alimony either can be or cannot be rehabilitated although that determination is subject to later modification. Allowing concurrent awards of alimony in futuro and

-7-

rehabilitative alimony would require a trial court to engage in an act of clairvoyance. The trial court would not only be required to anticipate the duration necessary for rehabilitation but would also be required to anticipate the future needs of a spouse who, it has been determined, can be rehabilitated.

*Id.* at 360 (emphasis added).

Under the Supreme Court's holding in *Crabtree* and the plain language of T.C.A. §36-5-101(d)(1)(2001), the trial court erred in making a concurrent award of both rehabilitative alimony and alimony *in futuro*. The question now becomes whether Mrs. Hochhauser is capable of being economically rehabilitated. If so, an award of rehabilitative alimony alone is correct. If not, then an award of alimony *in futuro* alone is correct. We turn to the relevant facts in record.

From our reading of the record, it appears that Wife can be economically rehabilitated. She has a bachelor's degree in accounting, she has been able to procure employment with the accounting firm of Bean-Ison and, from all facts in record, she appears to be motivated to continue her education and to sit for her CPA exam. The real issue is how long it will take Mrs. Hochhauser to achieve these goals. Husband argues that Wife could be fully rehabilitated within two (2) years. Specifically, Husband argues that Mrs. Hochhauser could complete the nineteen (19) additional hours necessary to allow her to sit for her CPA exam by taking three hours per semester for two years. We disagree with Husband's argument for several reasons. Although Mrs. Hochhauser could complete her course work in two years, if she attends classes in the fall, spring, and summer semesters, this year-round academic schedule would be difficult at best considering that she is the primary parent of a twelve and a fourteen year old. This fact, coupled with Mrs. Hochhauser's part-time work with Bean-Ison would make such an academic schedule very difficult at best. Realistically, it will take Mrs. Hochhauser at least three years to complete her hours, if she attends classes during two semesters each year. Also, it is a matter of common knowledge that the CPA exam is difficult. Mrs. Hochhauser testified that she sat for the test previously in 1981 or 1982. At that time, she passed one of the four parts but received no credit for that part since the requirement, at that time, was that the taker had to pass at least two parts in order to be given any credit. Consequently, when she does sit for the CPA exam, Mrs. Hochhauser will be at square one. Mickey Ison, managing partner of Bean-Ison CPAs & Consultants testified that only a very few people pass all four parts the first time they sit and that passing the exam often takes "two, three four sittings." For the foregoing reasons, we find that the trial court did not err in awarding Wife rehabilitative alimony for a period of five (5) years.

Turning to the amount of rehabilitative alimony awarded, we note that there is no dispute in the record that Mr. Hochhauser has a greater earning capacity than Mrs. Hochhauser, a fact which he admits, to wit:

Q. You would agree, Dr. Hochhauser, that your earning capacity is considerably greater than that of your wife; correct?

-8-

A. I think it's greater than hers.

It is also undisputed that Wife currently earns approximately $25,000 per year and that Husband currently earns $150,000 per year. Given the discrepancy in the parties' incomes, the discrepancy in their current levels of education and their respective earning capacities, we find that the amount of rehabilitative alimony should be raised to $2,000 per month.

Wife's Attorney Fees

Husband asserts that he should not have been ordered to pay seventy (70%) percent of Wife's legal fees It is well settled that an award of attorney fees constitutes alimony *in solido*. ***See Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn.Ct.App.1996). The decision whether to award attorneys' fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn.Ct.App.1995); *see also* Rule 13(d) Tenn. R. App. P. As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d), *see supra.* A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys' fees and expenses. ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn.Ct.App.1997); ***Duncan v. Duncan***, 686 S.W.2d 568, 573 (Tenn.Ct.App.1984). These awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn.Ct.App.1992), or would be required to deplete his or her resources in order to pay these expenses. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App 1980). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn.Ct.App.1980); ***Palmer v. Palmer***, 562 S.W.2d 833, 839 (Tenn.Ct.App.1977); ***Ligon v. Ligon***, 556 S.W.2d 763, 768 (Tenn.Ct.App.1977).

We have discussed, *supra*, the relative earning capacity of the parties, the fact that Mrs. Hochhauser makes considerably less than Mr. Hochhauser at present, the respective education of each party, and the primary responsibility Mrs. Hochhauser has for the minor children, which limits her ability to work full time. The facts of this case, when viewed in light of those factors outlined in T.C.A. § 36-5-101(d), do not preponderate against the trial court's finding on this issue. We, therefore, affirm.

Wife also raises an issue as to whether she is entitled to an award of attorney fees incurred in defending this appeal. Considering the division of marital property and the respective income of the parties, we believe it is appropriate for the parties to pay their own attorney fees and costs incurred on appeal.

For the foregoing reasons, we reverse the order of the trial court awarding Wife alimony *in futuro*. We modify the award of rehabilitative alimony to $2,000 per month for a period of

five (5) years.  The Order of the trial court is affirmed in all other respects.  Costs of this appeal are assessed one-half to Appellant, Edward Hochhauser, III and his surety and one-half to Appellee, Annelle G. Hochhauser.  The case is remanded to the trial court for such other proceedings as may be necessary.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.